**AMERICAN BANK OF COMMERCE, an Oklahoma Corporation, Appellant,**

v.

**BOGER–HARE MANUFACTURING CO., a partnership composed of Mike Boger and J. O. Hare, and J. O. Hare, an individual, Appellees.**

No. 54728.

Court of Appeals of Oklahoma, Division No. 2.

Aug. 11, 1981.

Released for Publication by Order of Court of Appeals Sept. 10, 1981.

Jerome S. Sepkowitz, Hiersche & Sepkowitz, Oklahoma City, for appellant.

Bill J. English, Norman, for appellees.

BRIGHTMIRE, Judge.

The dispositive question is whether a promissory note extinguished two notes previously executed by defendant partnership and its partners. The trial judge held it did and promisee bank appeals. We reverse.

I

The bank's evidence was stipulated, leaving only the defense in dispute.

On December 21, 1976, a newly formed partnership, Boger-Hare Manufacturing Co., and its two partners, Mike Boger and J. O. Hare, obtained a loan from plaintiff, the American Bank of Commerce, and executed a 90 day note for $10,085. At the same time Hare signed a guaranty contract agreeing to pay all of the partnership obligations to the bank.

Five months later, on May 13, 1977, the same parties returned to the bank and borrowed an additional $7,062.50 and executed a second 90 day note for that amount.

On May 30, 1979, the bank filed this lawsuit seeking judgment against the partnership and partners for an $8,162.11 balance due on the first note and a $7,437.89 balance due on the second note—a total of $15,600—plus interest and attorney's fee as provided for in the notes.

Defendants filed an answer denying anything was due from them on either note because both were "renewed" December 5, 1977, by a $15,600 note executed by Boger-Hare, Inc. This note, the answer continued, was meant to consolidate the indebtedness and the bank accepted the corporate note "as satisfaction of the" $15,600 balance due on the two original notes.

The bank admitted execution of the corporate note but denied it was a renewal note or that it was accepted as satisfaction of the two partnership notes.

The matter was heard January 4, 1980, by the court, who found "that a novation was created through the execution of the" corporate note and therefore denied bank recovery on the two partnership notes.

## II

Does the evidence support the finding of a novation? We hold it does not.

■ The requisites of a novation, according to *Tulsa Ice Co. v. Tiley*,[1] are these: (1) the existence of an obligation; (2) commitment of obligor and obligee to a new, valid contract; and (3) mutual assent to extinguishment of original obligation.

■ Here the first requisite is conceded. There was not, however, any evidence of the creation of a new agreement between defendants and the bank, nor any direct evidence of extinguishment of the two partnership notes. The "mere fact of the making of a new contract by which a third person becomes obligated to the creditor to pay the previously existing indebtedness of the original debtor," commented the court in *Tulsa Ice Co.*, "does not alone give rise to [a] presumption that the original debtor is released."

The evidentiary backbone of the defense is the testimony of their only witness— Hare. He said he and Boger talked to an official of the bank, Ron Peeler, about a loan in late 1976. The partners told Peeler, said Hare, that they were going to form a corporation and manufacture amplifiers. The partners needed money immediately so they went ahead, borrowed the money, executed the original notes and guaranty, and were given two corporate resolutions forms by Peeler, who said, "When you have your corporation filed with the Secretary of

State ... bring the ... resolutions back and they would change it to the corporation." The pronoun "it," we will assume, refers to the note.

However, Articles of Incorporation of Boger-Hare Mfg. Company, Inc., were not executed until March 1, 1977, and then not filed until May 16, 1977. In the meantime, on May 13, the partners went back to the bank for the second loan. At that time, Hare said they told Peeler "we had filed for our Articles of Incorporation, and he asked me at the time if I would help him on the loan ... and I told him at that time I couldn't take too much liability." He later explained that at the time of this discussion it was his "understanding of the second note that it [would be] a corporate indebtedness."

Still, he signed the note as a partner and no effort was made to transfer the indebtedness to the corporation for at least another seven months.

Hare said he talked with Peeler December 5, 1977, because it looked like the corporation was going to have a monthly income enabling it to pay off "the loans" on a monthly basis. Some $1,200 was paid on the notes and the one to be executed by "Boger-Hare, Inc." was prepared for the amount due on the two partnership notes. Both Hare and Boger signed the note without indicating any corporate title or that they did so in a representative capacity.

From these facts two legal consequences ensue. One, there is no evidence that a corporation named "Boger-Hare, Inc." exists.[2] Two, both Boger and Hare became personally obligated on the third note because the instrument "does not show that" either "signed in a representative capacity."[3]

Thus, if Hare's testimony is accepted as true, the most it shows is that the parties committed themselves to a new note. It does not support a finding that either party,

1. 157 Okl. 86, 10 P.2d 1090 (1932).

2. The name of the corporation certified by the Secretary of State is "Boger-Hare Mfg. Company, Inc."

3. 12A O.S.1971 § 3–403(2) and (3).

particularly the bank, agreed to the extinguishment of defendants' liability on either the two original notes or Hare's guaranty agreement.

Aside from the evidence, there are a couple of practical reasons why we feel rather sure a novation did not take place. First, it seems likely that if a novation was intended Hare would have asked for the cancellation of the first two notes. Second, it is unrealistic to assume the bank would have taken the note of a newly founded, closely-held corporation and not required guaranty commitments from both Boger and Hare—a conclusion which gains increased credibility from the fact that the bank obtained a guaranty from Hare to back up the original partnership notes.

So in the final analysis we think what actually took place here is that the bank agreed to let the corporation assume the partnership obligation and pay it off in monthly installments. Merely doing this, of course, would not have discharged the original obligation. The contemplated debt assumption, however, came to naught because the poorly drawn instrument failed to name Boger-Hare Mfg. Company, Inc.

█ Moreover, since there is no evidence the third note was intended as a renewal note it follows that its validity is impaired for want of consideration.

The judgment of the trial court is reversed and the cause is remanded with directions to enter judgment for the bank on the two partnership notes.

BACON, P. J., and BOYDSTON, J., concur.